UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DIOMEDES ALCANTARA, :
:
      Petitioner, :    Civ. No. 15-1543 (RBK)
:
v. :
:
J. HOLLINGSWORTH, :    **OPINION**
:
      Respondent. :
:

**ROBERT B. KUGLER, U.S.D.J.**

### I.    INTRODUCTION

Petitioner is a federal prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that the Federal Bureau of Prisons ("BOP") has improperly calculated his sentence. For the following reasons, the habeas petition will be granted.

### II.    BACKGROUND

In April, 1994, petitioner was arrested on charges involving a marijuana conspiracy in the Southern District of Florida. Petitioner was released on bond, but fled. In January, 1995, petitioner was indicted in the Southern District of Florida for failure to report to pretrial services and failing to appear in court.

On August 12, 1999, an arrest warrant was issued for petitioner in the Southern District of New York for conspiracy to distribute cocaine. It appears that he was subsequently arrested on August 13, 1999 based upon this New York warrant in Miami, Florida. (*See* Dkt. No. 10-1 at p. 7)

The next events to transpire related to petitioner's Florida charges, however. On August 11, 2000, after petitioner pled guilty to the marijuana conspiracy and jumping bail charges in the Southern District of Florida, he was sentenced to an aggregate sentence of eighty-five months imprisonment.[1]

It is unclear exactly when petitioner was transported to New York after he was sentenced in Florida. Nevertheless, two months after he was sentenced in Florida, on October 19, 2000, petitioner pled guilty in the Southern District of New York for the cocaine conspiracy charges there. On June 18, 2003, he was sentenced to 292 months imprisonment in the New York case to run concurrently with his Florida sentence.[2]

The Southern District of Florida sentence arises from the Sentencing Reform Act of 1984 ("SRA"), and the Southern District of New York sentence arises from the Prison Litigation Reform Act of 1995 ("PLRA"). Accordingly, the BOP determined that it could not aggregate the two sentences together because of statutory differences between the SRA and the PLRA. The BOP determined that petitioner's Florida sentence commenced on the day it was imposed, August 11, 2000, and the New York sentence commenced on the day it was imposed, June 18, 2003. Additionally, the BOP applied 376 days of prior custody credit (April 4, 1994 to April 15, 1994 and August 13, 1999 to August 10, 2000) to both sentences.

---

[1] The parties dispute whether petitioner's Florida sentence was for eighty-five as opposed to seventy months. However, this Court need not resolve this discrepancy because the Florida sentence is wholly subsumed by petitioner's second, longer concurrent New York sentence of 292 months either way.

[2] Petitioner's habeas petition initially raised a claim that the BOP was improperly calculating his sentence by determining that the Southern District of New York sentence was to run consecutively to his Southern District of Florida sentence. However, that issue has now been resolved as the respondent admits that the Southern District of New York orally ordered that that sentence should run concurrently to his Southern District of Florida sentence and has adjusted how the BOP has calculated petitioner's sentence accordingly.

At one point in time, the BOP determined that petitioner's projected release date was August 19, 2023. However, in a letter received by the Court after this matter was fully briefed, respondent indicates to the court that on October 30, 2015, petitioner's Southern District of New York sentence was reduced under 18 U.S.C. § 3582(c)[3] from 292 months to 235 months. (*See*

---

[3] Section 3582(c) of Title 18 of the United States Code states as follows:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

Dkt. No. 12) Thus, petitioner's new projected release date is June 30, 2019, according to the BOP.

The BOP takes the position that petitioner began serving his Florida sentence on the date it was imposed, or on August 11, 2000. However, in his habeas petition, petitioner argues that he did not start serving his Florida sentence until the date he received his New York sentence, "because only then was he in custody 'awaiting transportation to' his official 'detention facility' on the 'basis of the [Florida] conviction.'" (Dkt. No. 1-1 at p. 12) Thus, he claims that the period between August 11, 2000 and June 18, 2003 should be credited towards his New York sentence.[4] If petitioner is correct, then petitioner would be entitled to an additional approximate thirty-four months of credit towards his New York sentence. Thus, if correct, petitioner would be entitled to

---

> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)

[4] Petitioner's brief argues for an additional forty-six months of credit towards his New York sentence. While not fully explained by petitioner, the Court presumes that petitioner has arrived at this forty-six month period by seeking credit for the time since he was arrested on August 26, 1999 until the time he was sentenced in New York on June 18, 2003. However, respondent has stated in its responsive brief, and petitioner does not contest in his reply brief, that the BOP has credited petitioner on his New York sentence already for the period of time between August 26, 1999 and August 11, 2000. Thus, the period of credit at issue is approximately thirty-four (from August, 2000 to June, 2003) as opposed to forty-six months.

release potentially later this calendar year if this thirty-four month period is applied to his New York federal sentence because he is currently projected to be released in June, 2019.

### III.   DISCUSSION

Determining a term of imprisonment comprises two steps: (1) "a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served[;]" and (2) a defendant receives credit for time spent in custody "prior to the date the sentence commences ... that has not been credited against another sentence." *See* 18 U.S.C. § 3585(a) & (b); *see also Nieves v. Scism*, 527 F. App'x 139, 140–41 (3d Cir. 2013) ("In calculating a sentence, the BOP determines (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled.") (citing 18 U.S.C. § 3585). "[A] federal prisoner can receive credit for certain time spent in official detention before his sentence begins, as long as that time has not been credited against any other sentence. Section 3585(b) makes clear that prior custody credit cannot be double counted." *See Williams v. Zickefoose*, 504 F. App'x 105, 107 (3d Cir. 2012) (citing *United States v. Wilson*, 503 U.S. 329, 337 (1992)). "[A] federal sentence cannot begin to run earlier than on the date on which it is imposed." *Rashid v. Quintana*, 372 F. App'x 260, 262 (3d Cir. 2010) (citing *United States v. Labeille–Soto*, 163 F.3d 93, 98 (2d Cir. 1998)). The relevant statutory sections state as follows in full:

> (a) Commencement of sentence. -- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences

> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C § 3585(a) & (b).

Related to this statutory language, BOP Program Statement 5880.28 at 1-12 states as follows:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in *exclusive* federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition[.]

Petitioner argues that his Florida sentence did not begin to run until he was sentenced in New York. According to petitioner, after he was sentenced in Florida, he was not immediately taken for transport to his official detention facility, but instead, remained in Marshal Service custody to resolve the pending New York indictment. Thus, the period of time between when the Southern District of Florida sentenced petitioner and when the Southern District of New York sentenced petitioner should be counted as prior custody credit on his New York sentence since his Florida sentence did not commence until his New York sentence was entered.

However, the respondent maintains that petitioner is not entitled to federal habeas relief because the BOP has properly calculated that petitioner's Florida sentence commenced on the date he was sentenced for that conviction. Thus, according to respondent, the period between the two sentences cannot be counted towards his New York sentence because it would then constitute impermissible double counting. Respondent principally relies on three cases that it submits support its position; specifically: *Taylor v. Holt*, 309 F. App'x 591 (3d Cir. 2009), *Hicks*

6

*v. Mitchell*, No. 09-2785, 2010 WL 2721276 (D.S.C. June 18, 2010), *report and recommendation adopted by*, 2010 WL 2720942 (D.S.C. July 8, 2010) and *Mezheritsky v. Duncan*, 2010 WL 3834657 (D. Az. May 25, 2010), *report and recommendation adopted by*, *Mezheritsky v. Graber*, 2010 WL 3829207 (D. Az. Sept. 24, 2010). Because the underlying facts of these three cases are critical to determining their applicability to this case, an in depth analysis of their facts and legal conclusions is warranted.

In *Taylor*, 309 F. App'x 591, the petitioner was sentenced three times. First, Taylor was sentenced by an Ohio state court judge on June 20, 2003 to a ten-month term for marijuana trafficking. *See id.* at 591. The Ohio state judge indicated that the term should run concurrent to his federal sentence yet to be imposed. *See id.* Subsequently, U.S. Marshals assumed custody of Taylor via a writ of habeas corpus *ad prosequendum*. *See id.* at 591-92. On February 10, 2004, petitioner was sentenced in the United States District Court for the Northern District of Ohio to 46 months for being a felon in possession of a firearm. *See id.* at 592. Finally, on April 27, 2005, Taylor was sentenced in same district to 151 months imprisonment for conspiracy to distribute and possess with intent to distribute cocaine base. *See id.* In this second federal sentence, the sentence was to run concurrent with the first federal sentence. *See id.* Neither federal judge though stated how either federal sentence should run relative to the state sentence. *See id.* at 592. Ultimately, the Third Circuit held that each federal sentence was properly calculated as commencing on the date each was imposed. *See id.* at 593. However, it is worth noting that The Third Circuit expressly stated that Taylor did not seriously contest this conclusion in his brief on appeal. *See id.*

In *Hicks*, Hicks was sentenced in the Middle District of Florida on March 3, 1998 to seventy months for possession with intent to distribute methamphetamine. *See Hicks*, 2010 WL

7

2721276, at *3. Subsequently, Hicks was then transported to the Southern District of West Virginia and was sentenced on December 7, 1998 to 180 months to be served concurrently to "his current federal term." *Id.* Hicks argued that "because he was transported to the Southern District of West Virginia after he was sentenced in the Middle District of Florida, he was not 'awaiting transportation to . . . the official detention facility at which the sentence is to be served,' and therefore, his seventy-month sentence could not commence" until December 7, 1998. *See id.* at *4. Ultimately, the District of South Carolina rejected Hicks argument by stating as follows:

> Here, Hicks was in primary federal custody when the district court imposed a seventy-month sentence on March 3, 1998 and was remanded on that day to the custody of the United States Marshal. (Docket Entry 8–1 at 39.) While remaining in federal custody, Hicks was transported to West Virginia and was sentenced on additional federal charges. Under the facts of this case, BOP correctly determined that Hicks's seventy-month sentence commenced on March 3, 1998 and did not err in determining that from March 3, 1998 through December 7, 1998, Hicks was in federal custody awaiting transportation to the facility where he would ultimately serve his sentence. *See* [*United States v.*] *Wilson,* 503 U.S. 329, 333–35, 112 S. Ct. 1351, 117 L. Ed. 2d 593 [(1992)]; *Mitchell v. Story,* 68 F.3d 483, 1995 WL 610879 (10th Cir. 1995) (Table) (affirming the district court's decision that reached the same conclusion under similar facts and circumstances); *cf. United States v. Evans* 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into her "custody" for service of that sentence.").
>
> Accordingly, Hicks has failed to demonstrate that BOP erred in determining that Hicks's properly calculated aggregate sentence is fifteen years, nine months, and four days.

*Hicks*, 2010 WL 2721276, at *4.

In *Mezheritsky*, 2010 WL 3834657, an inmate faced two sentences both in the same federal district, the Central District of California. On January 13, 2013, Mezheritsky was

8

sentenced to 24 months, and on March 10, 2003, he was sentenced to 210 months. *See Mezheritsky*, 2010 WL 3834657, at *1. Ultimately, the District of Arizona determined that "[t]here is no dispute that Petitioner began serving his First Sentence on January 13, 2003." *Id.* at *5. Thus,

> [o]nce Petitioner's First Sentence was imposed and became "operative for the period of time at issue, it is artificial to maintain that custody nonetheless retains its preconviction character, that it remains conditional, unsettled, still dependent upon ... a trial court's eventual disposition of other charges not yet adjudicated." *Shevly* [*v. Whitfield*]*,* 718 F.2d [441,] 444 [(D.C. Cir. 1983)] (footnote omitted). Thus, the time Petitioner served between imposition of his First Sentence and imposition of his Second Sentence, *i.e.* January 13, 2003 to March 10, 2003, does not constitute *pre-sentence* incarceration for purposes of 18 U.S.C. § 3585(b).

*Mezheritsky*, 2010 WL 3834657, at *5.

These three cases at first glance appear to support respondent's position that the BOP has properly calculated that petitioner's Florida sentence commenced on August 11, 2000 as opposed to constituting prior custody credit on his New York sentence under § 3585(b). In contrast to these three cases, however, petitioner predominantly relies on one case, *Walton v. Maye*, No. 11-0844, 2011 WL 3423361 (W.D. Tex. Aug. 5, 2011).[5] Interestingly, *Walton* specifically discusses two of the three cases (*Mezheritsky* and *Hicks*) principally relied upon by respondent. Because petitioner relies so heavily on *Walton*, a recitation of the facts and legal conclusions of that case is also warranted.

> On October 21, 2003, Alvin Jerome Walton was arrested in Tennessee after local authorities found cocaine in his car. He was released on pre-trial bond on November 6, 2003, and returned to Houston. He remained on bond until February 23, 2005, when he was arrested by federal authorities on federal criminal charges

---

[5] While the above citation to *Walton* was a report and recommendation, a review of the Western District of Texas docket in *Walton* indicates that the District Judge adopted the Magistrate Judge's report and recommendation.

9

>pending in Philadelphia, Pennsylvania. The next day, Walton made an initial appearance before a magistrate judge in the Southern District of Texas, and he was ordered detained pending his trial in Philadelphia. He was then transferred from the Southern District of Texas to the Eastern District of Pennsylvania. Almost ten months later, on January 2, 2006, while still awaiting trial on the Philadelphia case, he was transferred by the Marshal's Service to the Middle District of Tennessee to stand trial on federal charges that had been filed arising out of the stop in 2003. Within weeks of arriving in Tennessee, Walton pled guilty to possession with intent to distribute five or more kilograms of cocaine, and on January 30, 2006, he was sentenced to a 120–month term of imprisonment. He was then returned to Philadelphia to address the charge pending in that district. More than two years later, Walton went to trial in the Philadelphia case, a jury found him guilty of three drug charges, and on December 3, 2008, the District Judge sentenced him to a 180–month sentence to run concurrently with "any undischarged term of imprisonment." Thereafter, Walton was transferred to the custody of the Bureau of Prisons, which received him on March 17, 2009.

*Walton*, 2011 WL 3423361, at *1 (footnote omitted). In *Walton*, the BOP took the position that Walton began serving his 120-month Tennessee sentence upon it being imposed on January 30, 2006. Thus, according to the BOP, when the second 180-month Pennsylvania sentence was imposed on December 3, 2008, the remainder of the Tennessee sentence aggregated with the 180-month sentence. Since the 180-month sentence was longer, the BOP determined that Walton's release date was 180 months from December 3, 2008. *See id.* at *2.

Walton argued that because he was immediately transferred after sentencing from the Middle District of Tennessee to the Eastern District of Pennsylvania, he was not placed into the custody of the BOP, but instead went into pretrial detention status on the Pennsylvania case. *See id.* at *3. Accordingly, he claimed that he was due thirty-four months and three days pretrial custody credit on the Pennsylvania case because he did not begin to serve either sentence until he was being held awaiting a designation to a BOP institution. *See id.*

Ultimately, the court agreed with Walton and stated as follows:

> Under § 3585's definition of "commencement," Walton did not commence serving his first sentence until he was "received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." As noted in the factual section, the BOP has taken the position that Walton started serving his sentence on the Tennessee case as soon as he was sentenced. In an ordinary case, where only one charge is pending, and where the defendant is in custody at sentencing, the BOP's approach would be correct. In that situation, the U.S. Marshall would hold the defendant until the BOP designated the institution in which the defendant is to serve his sentence, and then the U.S. Marshall would transport him to that facility. From sentencing until his transportation to the BOP facility, he would be "in custody awaiting transportation to ... the official detention facility" designated by the BOP.
>
> But that is not what happened here. Rather, immediately upon the sentence being imposed in the Tennessee case, Walton was transferred to Philadelphia to stand trial on the charges pending there. The BOP offers no evidence that while there Walton was "awaiting transportation" to the BOP facility in which he was going to serve the Tennessee sentence. Instead, all of the evidence before the Court demonstrates that Walton was in custody in Philadelphia awaiting trial on the charges *there*. There is also no evidence that during Walton's detention in Philadelphia the BOP designated an institution in which Walton was to serve the Tennessee sentence, nor is there any evidence that Walton was "awaiting transportation" to the BOP for the 34 months and 3 days he spent detained in Philadelphia. Here it was almost three years between the two sentences, and without evidence of any intention on the Government's part to transport Walton to the BOP, there is no basis for the Court to conclude that Walton's Tennessee sentence "commenced" (as that term is defined in § 3585(a)) at any point during the time he was being detained before sentencing in Philadelphia. Rather, the evidence indicates that *both* sentences commenced on the same day—the day Walton was sentenced in Philadelphia, December 3, 2008. Only then was Walton in custody "awaiting transportation" to the BOP-designated facility to serve both sentences.

*Walton*, 2011 WL 3423361, at *3 (footnote omitted). Thus, the *Walton* court held that, "[b]ut for the Philadelphia charge, [Walton] would have been transferred to the BOP to serve the Tennessee sentence. Accordingly, the plain language of § 3585(b) indicates that the 34 months

11

and 3 days that Walton was in custody between the sentencings in the two cases is time that should be credited against the Philadelphia sentence." *Walton*, 2011 WL 3423361, at *4.

In so holding, the *Walton* court expressly discussed *Hicks* and *Mezheritsky*. With respect to distinguishing *Mezheritsky*, the *Walton* court noted that:

> the issue presented in *Mezheritsky* was whether he was entitled to credit toward the second, 210 month sentence, for the time between January 13, 2003 and March 13, 2003 . . . . The magistrate judge . . . did not, however, consider the issue presented here, which is whether the first-imposed sentence began to run on the date of its imposition. Rather, the opinion states that "[t]here is no dispute that Petitioner began serving his First Sentence on January 13, 2003."

*Walton*, 2011 WL 3423361, at *5. Furthermore, the *Walton* court also distinguished *Mezheritsky* because there the defendant was facing two cases in the same district, "thus it would be at least arguable . . . that he was in fact awaiting designation to the BOP while he remained in custody in that district post-sentencing." *Id.* *5 n.5.

The *Walton* court also found *Hicks* unpersuasive. More specifically, the *Walton* court stated as follows:

> Hicks filed a habeas petition in the District of South Carolina challenging the BOP's time calculation. The magistrate judge there determined that the BOP correctly determined the commencement dates and Hicks was not entitled to pre-sentence custody credit from March 3, 1998, until December 7, 1998, because that time counted against his 70 month sentence. The basis of this decision was that, in the court's opinion, beginning on March 3, 1998, "Hicks was in federal custody awaiting transportation to the facility where he would ultimately serve his sentence." *Id.* at *4. The court did not explain the factual basis of its conclusion that Hicks spent nine months "awaiting transportation" while awaiting trial in another district. Moreover, *Hicks* relies upon a Tenth Circuit opinion, *Mitchell v. Story,* 1995 WL 610879 (10th Cir. Oct.18, 1995), when in fact that decision supports the opposite conclusion. In that case, Mitchell challenged his sentence calculation after he was sentenced to 57 months on February 12, 1990, and to 207 months concurrent with his 57 month sentence on

12

> December 13, 1990. In Mitchell's case, the BOP calculated his 207 month sentence starting on February 12, 1990, so he *did* receive credit against his second sentence for the time spent in custody after the first sentence was handed down. *Id.* at *2. This is the opposite result of *Hicks.* For these reasons, the *Hicks* decision is not persuasive, and the Court declines to follow it.

*Walton*, 2011 WL 3423361, at *6.

This Court finds the reasoning of *Walton* for distinguishing *Mezheritsky* and *Hicks* persuasive for the reasons stated therein as applied to this case. Furthermore, this Court also finds *Taylor* distinguishable. First, this Court notes that the petitioner in *Taylor*, unlike in this case and *Walton*, was only initially in federal custody under a writ of habeas corpus *ad prosequendum*. Furthermore, the two federal sentences in *Taylor* arose from the same district as opposed to two different federal districts as in *Walton* and this case. Thus, as explained in *Walton* and other cases, it was at least arguable that he was in fact awaiting designation to the BOP while he remained in custody in that district post-sentencing. *See Walton*, 2011 WL 3423361, at *5 n.5; *see also Jones v. Stephens*, No. 12-2398, 2015 WL 6018392, at *10 (W.D. Tenn. Oct. 14, 2015) (finding footnote 5 in *Walton* note persuasive where petitioner was sentenced twice in the same district such that petitioner's first sentence commenced when it was imposed).

Similar to *Walton*, this Court finds that petitioner's Florida and New York sentences began on the day he was sentenced in New York on June 18, 2003 because "only then was [Alcantara] in custody awaiting transportation to the BOP-designated facility to serve both sentences." *Walton*, 2011 WL 3423361, at *3. Respondent does not point to specific evidence that petitioner was awaiting transport to a BOP designated facility upon being sentenced in Florida. Furthermore, to the extent that the BOP relied on its own program statement in calculating petitioner's sentence, this Court notes that while a program statement is entitled to "some deference," its reliance here will be rejected as inconsistent with the clear language of the

13

statute. *See Rouses v. Menifee*, 122 F.3d 159, 164 (3d Cir. 1997) (citation omitted). The issue then becomes what is the net effect of this holding on petitioner's federal sentence that he is currently serving.

At issue in this case is the time between when petitioner's two federal sentences were entered by their respective courts, August 11, 2000 to June 18, 2003. As discussed *supra*, the BOP has already credited both of petitioner's federal sentences with the period of time from August 13, 1999 to August 10, 2000 (as well as from April 4, 1994 to April 15, 1994). The period from August 11, 2000 to June 18, 2003 cannot be credited as time served for the Florida sentence because that sentence had not yet "commenced," since there is no evidence to indicate that petitioner was awaiting transportation to a BOP designated facility during this time. Instead, this time should be treated as "credit for prior custody" under 18 U.S.C. § 3585(b). The question then becomes which sentence (Florida or New York) should this prior custody credit be applied. To reiterate, § 3585(b) states that:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

*Walton* is again instructive on why this period of time should not be credited towards his Florida sentence. As explained by *Walton*, it would be "odd indeed if one received pretrial credit for time spent in custody after sentencing." 2011 WL 3423361, at *4; *see also Shelvy*, 718 F.2d at 444 ("[I]t is artificial to maintain that [post-sentence] custody nonetheless retains its

14

preconviction character, that it remains conditional, unsettled, still dependent upon (and therefore 'in connection with') a trial court's eventual disposition of other charges not yet adjudicated.").

Petitioner spent the time period from August 11, 2000 to June 18, 2003 in official detention prior to when his New York sentence commenced and was entered. Furthermore, petitioner's overall detention began on August 26, 1999 when he was arrested on the charges related to the New York indictment. Thus, it follows that, but for the New York indictment, petitioner presumably would have been transferred to the BOP on August 11, 2000 when he was sentenced in Florida. However, he was not, but it appears he was transferred to New York based upon the pending New York charges. Therefore, under § 3585(b), the period of time between August 11, 2000 and June 18, 2003 should be credited towards his New York federal sentence.

## IV.   CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is granted and the BOP shall recalculate petitioner's sentence such that the time between August 11, 2000 and June 18, 2003 shall be credited towards petitioner's New York federal sentence. An appropriate order will be entered.


DATED:  May 5, 2016                                         s/Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge